UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PA'JE KIRSHBLUM,

                                                                                                     DECISION AND ORDER

                                         Plaintiff,

                                                                                                    17-CV-6769L

                v.

COMMISSIONER OF SOCIAL SECURITY,

                                       Defendant.
_____

        Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

        On December 30, 2013, plaintiff, then twenty-two years old, filed an application for Supplemental Security Income benefits under Title II of the Social Security Act, alleging an inability to work since November 4, 2012. (Administrative Transcript, Dkt. #8 at 24). Her application was initially denied. Plaintiff requested a hearing, which was held on March 22, 2016 before Administrative Law Judge ("ALJ") John P. Costello. The ALJ issued a decision on May 12, 2016, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #8 at 24-35). That decision became the final decision of the Commissioner when the Appeals Council denied review on September 10, 2017. (Dkt. #8 at 1-4). Plaintiff now appeals from that decision.

        The plaintiff has moved (Dkt. #9), and the Commissioner has cross moved (Dkt. #14) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below,

the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ summarized plaintiff's medical records in detail, with particular focus on plaintiff's mental health treatment for depressive disorder and anxiety disorder/post-traumatic stress disorder, which the ALJ concluded constituted a severe impairment. Based on the evidence of record, the ALJ found that the plaintiff retained the RFC to perform a full range of work at all exertional levels, except that plaintiff is limited to simple, routine tasks; is limited to low-stress work, defined as involving no more than occasional decision-making; and cannot interact more than occasionally with coworkers and/or the general public. (Dkt. #8 at 30). When presented with this RFC, vocational expert Peter A. Manzi testified that plaintiff can perform the representative unskilled positions of hand packager and laundry worker. (Dkt. #8 at 34).

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence, and that the ALJ ignored or mischaracterized the evidence of record. Specifically, plaintiff argues that the ALJ improperly rejected the opinions of plaintiff's treating therapists and a psychologist as inconsistent with the evidence of record, when they were not.

Intern mental health counselor Nicole Miceli treated plaintiff through October 2012, prior to plaintiff's Social Security benefits application and prior to her alleged disability onset date. She opined that plaintiff's ability to engage in work-related mental functions was "very limited," and that plaintiff was incapable of performing any activity except for therapy. (Dkt. #8 at 560-63). As the ALJ noted, however, Ms. Miceli's opinion was flatly contradicted by plaintiff's treatment records from Ms. Miceli and others in her office, which noted no serious clinical deficits, typically documented good progress with depression and social interaction issues, and expressed in plaintiff's October 2013 discharge assessment that plaintiff was "resil[i]ent, strong and capable of anything she chooses to do. She has done a great deal of good work." (Dkt. #8 at 544). *See* Dkt. #8 at 581, 597, 604 (January 5, 2012 assessment, "[plaintiff] is a very mature 21 year ol[d] and wants nothing more than to be productive in society and as a mother"); 584 (January 16, 2013 progress note: "[plaintiff] stated that for the first time she is [n]ot acting reactive and exploding straight from her emotions"); 587 (January 23, 2013, "Pa'je seemed much more motivated and future[-oriented] than this writ[]er has ever seen her"); 585 (January 30, 2013, plaintiff reports that, "anger levels are lowering and she is not so mad all the time. This is making her les[s] depressed and more able to do things. She filled out all her GED paperwork and is getting ready to send it off . . .").

Psychologist Dr. Christine Ransom, whose relationship to the plaintiff (whether treating, examining, or otherwise) is not clear from the record, submitted an assessment in May 2012 (six months prior to plaintiff's alleged disability onset date), relating that plaintiff had reported "serious auditory hallucinations" which interfered with her thought processes. Dr. Ransom opined that plaintiff's mood and affect were "moderately to markedly dysphoric," that her attention and concentration and memory skills were "moderately" impaired, and that her cognitive functioning,

insight and judgment were normal. Ultimately, Dr. Ransom concluded that plaintiff's ability to maintain attention and concentration in a work environment, or to perform low stress and simple tasks, was "very limited," and that plaintiff was capable of nothing more than engaging in therapy for a period of six months. (Dkt. #8 at 536-41). Because there were no supporting treatment records (indeed, Dr. Ransom reported that plaintiff is "not currently in mental health treatment" and had not been treated since 2009) and no evidence to suggest any ongoing treating relationship between plaintiff and Dr. Ransom, or to otherwise support limitations which could meet the 12-month durational requirement for disability, the ALJ assigned "little" weight to Dr. Ransom's opinion.

Licensed mental health counselor Kristin Tripp, who began treating plaintiff for depression and PTSD in or before November 2015 (three years after the alleged disability onset date), submitted a letter opining in conclusory fashion that "[i]t is not recommended that [plaintiff] be employed . . . emotional and behavioral issues [affect] her activities of daily living, limiting her ability to be employed at this time." (Dkt. #8 at 618). Given the vagueness of the opinion and the lack of any supporting evidence that plaintiff's symptoms interfere with her functioning to the extent described by Ms. Tripp, the ALJ afforded it "limited" weight.

Having granted limited weight to the opinions of plaintiff's treating therapists and Dr. Ransom – none of whom submitted an opinion that reflected substantially on plaintiff's limitations during the relevant time period, or that was well-supported by plaintiff's treatment records – the ALJ relied most heavily on the opinion of consulting psychiatrist Dr. Kristina Luna in making his RFC finding. Dr. Luna examined plaintiff on March 7, 2014, and noted that although plaintiff exhibited some anxiety and depression, she was cooperative and appropriate, with coherent and goal-directed thought processes, and no evidence of hallucinations. (Dkt. #8 at 567). After

4

examining plaintiff and testing plaintiff's attention, concentration, and memory skills, Dr. Luna opined that plaintiff has no limitations in following and understanding simple directions, can perform simple tasks independently and maintain a regular schedule, and can make appropriate decisions. She further opined that plaintiff is "mildly" limited with respect to attention and concentration, performance of complex tasks, and relating adequately with others. Plaintiff would have "moderate" difficulty coping with stress. (Dkt. #8 at 568).

The ALJ gave Dr. Luna's opinion "some" weight, crediting her opinion as to plaintiff's moderate difficulties with stress, and ultimately concluding based on plaintiff's treatment records and testimony that plaintiff's ability to engage in social functioning and to maintain attention and concentration were actually *more* limited than Dr. Luna had opined, and that plaintiff was "moderately" limited in both areas. (Dkt. #8 at 29, 568).

While "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (unpublished opinion). Furthermore, it is "not require[d] that [the] ALJ have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983).

Here, the ALJ discussed the medical opinion evidence provided by each source, set forth his reasoning for the weight afforded to each opinion, and cited and discussed specific, relevant evidence in the record which supported his determination. As such, I do not find that the ALJ improperly substituted his "own expertise or view of the medical proof [in place of] any competent

5

medical opinion," or that his assignment of lesser weight to the opinions of Dr. Ransom and/or plaintiff's treating therapists was improper. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

Nor do I find that the ALJ misconstrued the record. While plaintiff argues that the ALJ overlooked evidence of plaintiff's consistently angry and anxious mood and tendency to react (and overreact) to situations with aggression, the ALJ did explicitly recognize plaintiff's "ongoing social anxiety and anger," and tailored his RFC finding to account for it, by limiting plaintiff to simple, routine work in a low-stress setting with no more than occasional decision making and no more than occasional interaction with coworkers or the public. (Dkt. #8 at 32).

Plaintiff also argues that the ALJ's characterization of plaintiff's daily activities as encompassing a "good range of independent daily tasks" was inaccurate, because although plaintiff was technically maintaining a household and caring for a child, she had undergone two evictions, and required intervention from Child Protective Services to address her parenting. Although plaintiff did not testify concerning these issues, she stated that her activities of daily living involve cooking, cleaning, caring for her toddler son "24/7," hand-sewing clothes for him, using her phone to text a friend or engage with social media for 5-6 hours per day, and occasionally engaging in errands like grocery shopping. (Dkt. #8 at 55-63).

While plaintiff's discharge of her household and parental duties may have been imperfect, this evidence is not in conflict with the ALJ's observations: the record establishes that despite these difficulties, plaintiff has maintained an independent household (and custody of her son) throughout the relevant time period, caring for herself and her child with little assistance and with only sporadic, conservative mental health treatment. As such, the ALJ's conclusion that plaintiff's activities of daily living demonstrated the ability to independently perform "a good range of basic mental activities which could translate reasonably into an ability to perform fulltime, unskilled

work," with the additional limitations he prescribed, was supported by substantial evidence. (Dkt. #8 at 32). Moreover, to the extent that the plaintiff's difficulties with respect to housing and parenting could be interpreted as evidence of limitations in her ability to make appropriate decisions or interact with others, the ALJ accounted for them by limiting plaintiff to simple, unskilled work with no more than occasional decision making, and no more than occasional interaction with coworkers or the public.

It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning, and there is no dispute that the positions identified by the vocational expert – hand packager and laundry worker – meet that description. *See generally Martinez v. Commissioner*, 2017 U.S. Dist. LEXIS 93475 at *20-*21 (N.D.N.Y. 2017) (collecting cases, and noting that the "Second Circuit has held that moderate limitations in work related functioning [including making appropriate decisions, relating adequately with others, and dealing with stress] does not significantly limit, and thus prevent, a plaintiff from performing unskilled work"); *Saxon v. Colvin*, 2015 U.S. Dist. LEXIS 83447 at *14 (W.D.N.Y. 2015) (moderate limitations in ability to make appropriate decisions, relate adequately with others, and cope with stress are sufficiently accommodated by an RFC limited to routine tasks in a low stress, low contact environment).

In summary, I find that the ALJ's determination that plaintiff, at the time of her application a 22-year-old woman with a limited education and no past relevant work, retains the RFC to perform a limited range of unskilled, simple, routine, low-stress work with no more than occasional interaction with coworkers and the public, is supported by substantial evidence, and was not the product of legal error.

I have considered the rest of the plaintiff's claims, and find them to be without merit.

**CONCLUSION**

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not based on legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #9) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #14) is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed in its entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
March 13, 2019.